UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AIDA L. TORO,

     Plaintiff,

v.                                                    Case No:  6:14-cv-1601-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Aida L. Toro, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled. *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

On March 29, 2011, Plaintiff filed an application for DIB alleging disability beginning February 1, 2011. (Tr. 207-10). Plaintiff's application was denied initially on July 27, 2011, and on reconsideration on September 20, 2011. (Tr. 106-22, 151-52). A hearing was held before Administrative Law Judge Philemina M. Jones (the "ALJ") on November 13, 2012. (Tr. 63-102). On January 22, 2013, the ALJ issued an unfavorable decision. (Tr. 38-62). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on July 19, 2014. (Tr. 1). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on October 1, 2014. The parties having filed a Joint Memorandum setting forth their respective positions, this case is ripe for review.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2011, Plaintiff's alleged onset date. (Tr. 46). At step two, the ALJ found that Plaintiff had the following severe impairments:  obesity; hypertension; cardiovascular disorder; Bell's palsy; sleep apnea; asthma; history of back disorder; history of left shoulder, status post surgery; carpal tunnel syndrome, status post release; affective disorder; and anxiety disorder.  (Tr. 46-47).  At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of any of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to:

> perform less than full range of light work as defined in 20 CFR
> 404.1567(b).  She can occasionally climb ramps and stairs, but can never
> climb ladders, ropes, or scaffolds, but can frequently stoop, occasionally
> kneel and crawl.  She is left hand dominant, and can frequently use left
> and right hand for fine and gross manipulation.  She should avoid
> concentrated exposure to extreme of heat and cold, wetness, humidity, and
> hazards, also avoiding even moderate exposure to fumes, odor, dusts,
> gases, and poor ventilation.  She can perform simple jobs that can be
> learned in thirty days or less, and should perform the same job duties over
> and over during an eight-hour workday, and should occasionally work
> with the public.  She can also read and understand English, can write more
> than her name in English, but can speak and understand only a little
> English.

(Tr. 49).  At step four, the ALJ found that Plaintiff was capable of performing past relevant work

as a mail sorter, as such work does not require the performance of work-related activities precluded

by Plaintiff's RFC.  (Tr. 55).  The ALJ concluded that Plaintiff has not been under a disability

from February 1, 2011, through the date of the decision, January 22, 2013.  (Tr. 55).

## II.    Analysis

Three issues are raised in the parties' Joint Memorandum.  As set forth in the Joint

Memorandum, they are:  (1) whether the ALJ erred in determining that Plaintiff has the RFC to

perform light work with some additional limitations after providing great weight to the opinions

of a non-examining physician and examining consultative physician both of whom did not have

all the relevant evidence, failing to provide appropriate weight to the opinions of the treating

physicians, and failing to consider and weigh all of the objective evidence;  (2) whether the ALJ

properly relied on the testimony of the vocational expert after posing a hypothetical question that

did not adequately reflect the limitations of Plaintiff; and (3) whether the ALJ erred in determining that Plaintiff has the RFC to perform light work after failing to adequately assess Plaintiff's credibility when she suffered from pain caused from neck, shoulder, knee, and arm impairments.

> **a) Whether the ALJ erred in determining that Plaintiff has the RFC to perform light work with some additional limitations after providing great weight to the opinions of a non-examining physician and examining consultative physician both of whom did not have all the relevant evidence, failing to provide appropriate weight to the opinions of the treating physicians, and failing to consider and weigh all of the objective evidence.**

Plaintiff argues that the ALJ's conclusions regarding Plaintiff's limitations are not supported by substantial evidence. (Doc. 24 p. 16). Specifically, Plaintiff contends that it was improper for the ALJ to accord "great weight" to the opinions of Robert Steele, M.D., a non-examining state agency physician, and Nitin Hate, M.D., a one-time examining physician, because a significant amount of medical evidence was not available at the time Drs. Steele and Hate offered their respective opinions. (Doc. 24 p. 17, 20). In addition, Plaintiff contends that the ALJ erred by failing to consider an MRI of Plaintiff's right knee dated November 12, 2012, and by failing to note the weight accorded to the opinions of treating physicians Daniel Nieves-Quinones, M.D., Abid Rasool, M.D., Maria Gonzalez, M.D., Geoffrey Stewart, M.D., and George M. White, M.D. (Doc. 24 p. 20-21). Plaintiff also argues that the ALJ erred by failing to adequately consider the opinion of Plaintiff's treating psychiatrist Juan Balaguer, M.D. (Doc. 24 p. 22).

In response, Defendant argues that the ALJ did not err by failing to assign the weight she accorded the records from Drs. Nieves-Quinones, Rasool, Gonzalez, and Stewart because while these physicians offered diagnoses of Plaintiff, none of them offered an opinion regarding what Plaintiff could still do, her restrictions, or her ability to work in general. (Doc. 24 p. 22-23). As for the opinion of Dr. White, Defendant argues that his statement that Plaintiff's work status was "limited duty" was an opinion reserved to the Commissioner and not entitled to controlling weight.

Defendant contends that the ALJ did not err by failing to specifically discuss Plaintiff's November 2012 MRI of Plaintiff's right knee because there is no requirement that an ALJ must refer to every piece of evidence in the record and because Plaintiff failed to show that the MRI established greater limitations than imposed by the ALJ in formulating Plaintiff's RFC.  (Doc. 24 p. 24).  Defendant argues that the ALJ's decision to accord little weight to Dr. Balaguer's opinion is supported by substantial evidence.  (Doc. 24 p. 26-28).  Finally, Defendant argues that the ALJ did not err in according the opinions of Drs. Steele and Hate great weight because the medical evidence subsequent to their respective opinions does not contradict their opinions.  (Doc. 24 p. 29).

The Joint Memorandum's "first" issue contains numerous subissues.  The Court addresses each below.

### i)    Whether the ALJ erred by according great weight to the opinions of Dr. Hate and Dr. Steele

The record reflects that Dr. Hate completed a disability evaluation of Plaintiff on May 24, 2011.  Dr. Hate noted that Plaintiff's gait was normal, that Plaintiff's touch and pin-prick sensations were generally normal, that her muscle strength was normal in all major muscle groups, that Plaintiff had full range of motion in all joints, and her coordination for gross and fine movements was normal.  (Tr. 581).  Dr. Hate's impression was that Plaintiff has leaky heart valves, a history of asthma, left should injury and surgery in 1990, and bilateral carpal tunnel release, now in remission.  (Tr. 582).

The record reflects that Dr. Steele completed an RFC Assessment of Plaintiff on September 19, 2011.  (Tr.135-37).  Dr. Steele opined that Plaintiff can only occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of more than 6 hours on a sustained basis in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull without limit.  (Tr. 135).  Dr. Steele found that Plaintiff can occasionally climb ramps/stairs,

never climb ladders/ropes/scaffolds, balance without limit, frequently stoop, occasionally kneel, occasionally crouch, and occasionally crawl.  (Tr. 135-36).  Dr. Steele found that Plaintiff has no manipulative, visual or communicative limitations.  (Tr. 136).  Dr. Steele found that Plaintiff has environmental limitations and must avoid concentrated exposure to extreme cold, heat, wetness, humidity, and hazards.  (Tr. 136).  Dr. Steele found that Plaintiff must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  (Tr. 136).

An ALJ is not forbidden from considering a medical evaluation simply because the doctor did not have access to medical evidence that was submitted after the evaluation.  *Gibson v. Astue*, 2011 WL 307693, at *8 (M.D. Fla. Jan. 6, 2011).  As long as the ALJ considers all relevant evidence and substantial evidence supports the ALJ's decision, there is no error warranting remand.  *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  "The ALJ must review the relevant medical record as a whole not simply the last doctors who saw or reviewed the claimant's record." *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In this case, the Court finds that the ALJ did not err in according great weight to the opinions of Dr. Hate and Dr. Steele.  The subsequent medical evidence cited by Plaintiff shows that examination and testing revealed weakness and decreased sensation in Plaintiff's facial nerves, and pain or limited range of motion in her back, neck, shoulders, knees and arms.  (Tr. 680-81, 703-04, 732, 749-50, 756-57, 773, 857-58, 860).  The ALJ's opinion makes it clear that the ALJ specifically considered the subsequent medical evidence relating to Plaintiff's pain and limited range of motion in her back, neck, shoulders, knees, and arms:

> Considering shoulder and back pain, even though the claimant has a history of pain in the shoulder and back, radiological studies obtained after the alleged onset date showed that the shoulder structures were normal. (Exhibit 14F/2).  During the consultative examination, the claimant's gait was normal, she was able to walk heel to toe, negative bilateral leg raising was observed no spasms were noted, muscle strength was normal in all

major muscle groups, and range of motion was full in all joints. (Exhibit 11F). On January 10, 2012, the claimant underwent a spinal fusion, after radiological studies had revealed narrowing and disc protrusion at C5-C6 that caused moderate neurocompressive pathology with foraminal stenosis. (Exhibit 21F/2). However, even before surgery was performed, the same doctor observed normal range of motion of the shoulders, hips, knees, and ankles. (Exhibit 21F/2). While the doctor observed tenderness in the cervical region, there were no focal areas of deformity or spasm, and range of motion in the neck was only moderately limited. (Exhibit 21F/2). Again, despite the radiological results and the signs of tenderness in the neck, the doctor examined the claimant's areas of tenderness or spasms. (Exhibit 21F/2). Finally, the doctor noted normal gait, full muscle strength in all extremities, except for left wrist extensor that was slightly below normal levels, at 4/5. (Exhibit 21F/2). After the surgery, the doctor scheduled a follow up visit in two weeks, and temporarily limited the claimant to no tub bath, no lifting or carrying, and no activities that required being alert for the following twelve hours. (Exhibit 21F/6). The evidence of record does not document that these post-surgical limitations were extended or made permanent.

(Tr. 51-52). While Dr. Hate and Dr. Steele did not have access to this subsequent medical evidence, the ALJ specifically considered the subsequent evidence and factored it into formulating her RFC. As to the medical evidence concerning Plaintiff's decreased sensation in her facial nerves, there is no indication that this evidence conflicts with the findings of Dr. Hate and Dr. Steele, or that it causes Plaintiff greater limitations than found by the ALJ. Accordingly, the Court will not remand for the ALJ according great weight to the opinions of Dr. Hate and Dr. Steele.

> ii)   **Whether the ALJ erred by failing to specify the weight given to the opinions of treating physicians Daniel Nieves-Quinones, M.D., Abid Rasool, M.D., Maria Gonzalez, M.D., and Geoffrey Stewart, M.D., and to the MRI dated November 12, 2012.**

In *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight

given to it and the reasons therefor.  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, while Plaintiff argues generally that the ALJ erred by failing to assign the weight given to Dr. Nieves-Quinones, Dr. Rasool, Dr. Gonzalez, and Dr. Stewart, Plaintiff fails to identify the opinions these physicians offered and how these opinions conflict with the ALJ's RFC determination.  While these physicians generated medical records containing diagnoses and the medications they prescribed, none of the physicians offered an opinion as to Plaintiff's physical and mental restrictions or what Plaintiff can still do despite her impairments.  *See, e.g.,* (Tr. 366-98, 544-59, 602-06, 679-86, 701, 721-24, 725-47, 748-53).  Diagnoses alone are insufficient to establish that an impairment is severe, let alone to establish functional limitations in a claimant's RFC.  *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002).  Plaintiff has failed to establish that the evidence from these physicians constituted "opinions" requiring the ALJ to state the weight she accorded such evidence.  Accordingly, the Court will not remand this case to require the ALJ to do so.

In addition, the Court finds that remand would be improper to have the ALJ specifically address the two-page Diagnostic Imaging Report generated after Plaintiff's MRI on November 12, 2012.  (Tr. 857-58).  The record in this case consisted of 873 pages and the ALJ drafted an eleven-page opinion citing to myriad medical evidence. There is no rigid requirement that an ALJ specifically refer to every piece of evidence in his or her decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  The ALJ assessed significant limitations related to Plaintiff's knees, including limitations to occasionally climbing ramps and stairs, frequently stooping, and occasional kneeling and crawling.  (Tr. 49).  Accordingly, the Court finds that the ALJ did not

commit reversible error in failing to specifically address Plaintiff's November 2012 MRI in her opinion.

        **iii)**     **Whether the ALJ erred in failing to state the weight accorded to Dr. White's opinion from September 2012 and in according little weight Dr. Balaguer's opinion from March 2012.**

The record reflects that Plaintiff presented to Dr. White for a followup examination on September 20, 2012. (Tr. 860). Dr. White noted that Plaintiff complained of numbness in the distribution of the right ulnar nerve including the little finger and ulnar half of the ring finger. (Tr. 860). Dr. White noted that Plaintiff complained of right hand weakness especially with grip and pinch and that Plaintiff complained of some loss of coordination and dexterity in the right hand. (Tr. 860). Dr. White noted that Plaintiff described the pain as mild, achy, and rare in character and quality. (Tr. 860). A limited exam of Plaintiff's right upper extremity revealed no significant tenderness to palpitation, no swelling, no ecchymoses, normal range of motion in the thumb, index, middle, ring, and little finger, and normal active range of motion for wrist and elbow. (Tr. 860). Neurological testing of the right upper extremity revealed abnormal sensation in the ulnar nerve distribution with diminished fine touch. (Tr. 860). Dr. White diagnosed Plaintiff with ulnar nerve entrapment of the right elbow. (Tr. 860). Dr. White noted that Plaintiff's "work status" was "limited duty" and directed Plaintiff to "[l]imit use of affected arm." (Tr. 860).

In her opinion, the ALJ analyzed the opinions of Dr. White as follows:

> On May 6, 2011, George White, M.D., the claimant's treating orthopedist, after performing a carpal tunnel release surgery on the claimant's right wrist, restricted the claimant from heavy lifting for two weeks, and gradual return to normal activity after that. (Exhibit 13F). On June 21, 2011, Dr. White returned the claimant to full-duty with no restrictions. (Exhibit 13F/6). The undersigned gives great weight to Dr. White's opinions, since they reflect his observations as a surgeon and treating physician. However, the undersined [sic] notes that the restrictions to heavy lifting were only temporary, and that, after less than two months, Dr. White concluded that the claimant was to return to full duty.

(Tr. 54).  The ALJ, however, made no mention of Dr. White's notes from the September 20, 2012 followup examination.

Here, the Court finds it would be inappropriate to remand this case to require the ALJ to state the weight she accorded Dr. White's seven word opinion "Limited duty.  Limit use of affected arm."  (Tr. 860).  This opinion fails to explain the degree of limitation and there is no indication that it is not accounted for by the ALJ's RFC finding that Plaintiff "is left hand dominant, and can frequently use left and right hand for fine and gross manipulation."  (Tr. 49).  Thus, even if the ALJ were to give this opinion "great weight," it would not require additional limitations to Plaintiff's RFC.

As to the medical records from Dr. Balaguer, the record reflects that Plaintiff visited Dr. Balaguer eight times in 2011 and 2012.  On February 17, 2012, Dr. Balaguer completed a Mental Medical Source Statement indicating that Ms. Toro would have the following limitations: markedly limited in her ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting

- 12 -

behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic

standards of neatness and cleanliness; the ability to respond appropriately to changes in the work

setting; the ability to travel in unfamiliar places or use public transportation; and the ability to set

realistic goals or make plans independently of others. (Tr. 687-689).

In her opinion, the ALJ analyzed the records from Dr. Balaguer as follows:

> J. Balaguer, M.D., who treated the claimant as a psychiatrist, filled out a
> functional capacity report, and opined that the claimant is overall
> markedly limited in her ability to understand and remember, she is also
> overall markedly limited in her ability to sustain concentration and
> persistence, ability to socially interact, and ability to adapt.  (Exhibit 22F).
> More particularly, Dr. Balaguer found that the claimant is markedly
> limited in sixteen of twenty different mental ability categories, and
> moderately limited in the remaining four categories.  (Exhibit 22F).
>
> The undersigned gives little weight to Dr. Balaguer's opinion, since it is
> not supported by the records.  (Exhibit 41F).  For instance, even though
> the claimant visits the psychologist for follow ups, those visits are usually
> scheduled three months apart, indicating ongoing, but not urgent care.
> (Exhibit 41F).  Furthermore, a recent mental status examination showed
> that while the claimant has some memory limitations, her judgment and
> insight were normal, speech and thought processes were goal oriented,
> logical, and coherent. (Exhibit 12F/4).  During the same examination, the
> claimant displayed no symptoms of psychosis, had no articulation
> problems, had a full range of appropriate affects, and did not appear to be
> in acute mental distress.  (Exhibit 12F/4).

(Tr. 53).

The opinions of treating physicians are entitled to substantial or considerable weight unless

good cause is shown to the contrary.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).

The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion

was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.*

Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or

examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ had good cause to accord Dr. Balaguer's opinion "little weight." As the ALJ noted, Dr. Balaguer's opinion is unsupported by the records. Notes from Plaintiff's visits to Dr. Balaguer indicate only superficial mental examinations, and largely consist of checklists. (Tr. 862-67). These records do not support the numerous limitations opined by Dr. Balaguer in his Mental Medical Source Statement completed on February 17, 2012.

In addition, as the ALJ noted, Dr. Balaguer's opinion was contradicted a mental examination performed by Yamila Santos, Ph.D. in May 2011, who found that Plaintiff had some memory limitations; her judgment and insight were normal; her speech and thought processes were goal oriented, logical, and coherent; she displayed no symptoms of psychosis; had no articulation problems; had a full range of appropriate affects; and did not appear to be in acute mental distress. (Tr. 591).

Furthermore, in her opinion, the ALJ accorded great weight to the opinions of two state agency consultants, Sally Rowley, Psy.D., and Carine Samwel, Ph.D., who each completed an evaluation of Plaintiff's mental RFC. In June 2011, Dr. Rowley opined that Plaintiff was ble to perform simple repetitive tasks, and was moderately limited in her ability to interact with the public and to adapt to changes in the work setting. (Tr. 118-19). In September 2011, Dr. Samwel opined that Plaintiff could understand, retain, and carry out simple instructions and that she could consistently and usefully perform routine tasks on a sustained basis, with normal supervision. (Tr. 137). Dr. Samwel also found that Plaintiff could cooperate effectively with the public and co-workers in completing simple tasks and transactions. (Tr. 139).

The ALJ's decision to accord "little weight" to Dr. Balaguer's opinion was supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's finding on appeal.

> iv)     **Whether the ALJ properly relied on the testimony of the vocational expert after posing a hypothetical question that did not adequately reflect the limitations of Plaintiff.**

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence for the reasons argued by Plaintiff in the section above. (Doc. 24 p. 31). As a result, Plaintiff argues, the ALJ's hypothetical question to the vocational expert did not adequately reflect Plaintiff's limitations, and it was erroneous for the ALJ to rely on the vocational expert's testimony as a result. (Doc. 24 p. 31). Defendant argues that the ALJ's RFC finding was supported by substantial evidence and it was proper for the ALJ to rely on the vocational expert's testimony. (Doc. 24 p. 33-34).

In this case, the Court finds that the ALJ did not err by relying on the testimony of the vocational expert. In order for a vocational expert's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ's hypothetical question to the vocational expert encompassed all of the limitations the ALJ included in her RFC assessment. (Tr. 97-100). As explained in the section above, Plaintiff has failed to show that the ALJ's RFC assessment was not supported by substantial evidence. Thus, the ALJ's RFC assessment comprised all of Plaintiff's impairments and the ALJ did not err when she relied on this testimony to find that Plaintiff could return to her past relevant work as a mail sorter.

> **v)  Whether the ALJ erred in determining that Plaintiff has the RFC to perform light work after failing to adequately assess Plaintiff's credibility when she suffered from pain caused from neck, shoulder, knee, and arm impairments.**

Plaintiff contends that the ALJ erred in determining that Plaintiff has the RFC to perform light work after failing to adequately assess Plaintiff's credibility when she suffered from pain caused from neck, shoulder, knee, and arm impairments.  (Doc. 24 p. 35).  Plaintiff argues that the ALJ's credibility finding is nothing more than boilerplate and does not offer enough reasoning to support the ALJ's determination that Plaintiff's complaints are not credible.  (Doc. 24 p. 38).

In response, Defendant argues that ALJ's credibility determination was supported by substantial evidence, including Plaintiff's medical examinations, her generally conservative treatment, and her receipt of unemployment benefits.  (Doc. 24 p. 38-39).

In this case, Plaintiff is correct that the ALJ's opinion contains the standard, boilerplate language often utilized by ALJs in assessing a claimant's credibility.  The ALJ explained in her opinion that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 54).  Plaintiff is incorrect, however, to suggest this boilerplate encapsulates the entirety of the ALJ's consideration of Plaintiff's subjective complaints.  In the five pages preceding the boilerplate paragraph, the ALJ thoroughly reviewed Plaintiff's medical records and explained the weight she accorded to the opinion evidence.  Given this thorough discussion, the ALJ ultimate finding that Plaintiff's symptoms "are not entirely credible for the reasons explained in this decision" is clearly supported by substantial evidence.

**III.     Conclusion**

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to

enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 25, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties